IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JESSICA RODRIGUEZ, et al., § | |
| § | |
| *Plaintiffs* § | |
| § | |
| v. § | Civil Action No.  SA:13-CV-596-XR |
| § | |
| UNITED STATES OF AMERICA, § | |
| § | |
| *Defendant*. § | |

### ORDER

On this day the Court considered Defendant's motion to dismiss (docket no. 10).  For the following reasons, the Court GRANTS IN PART and DENIES IN PART the motion.

### I. Background[1]

Plaintiffs Jessica and Scottie Rodriguez are the parents of E.R.  On March 23, 2005, E.R. was born full term and delivered by a scheduled caesarian section at Wilford Hall Medical Center ("WHMC").  At the time of birth, the delivery room nurse noted that E.R. was "small for gestational age."  Nevertheless, at 45 minutes of life, E.R's doctor ordered her admitted to the normal newborn nursery, noting that her condition was good.  At both 3 and 12 hours of life, nursing evaluations were noted as "unremarkable" or "within normal limits."  At 36 hours of life, E.R.'s vital signs were noted as within normal limits and E.R. continued "rooming in" with her mother.

On March 25, 2005, E.R.'s second day of life, her parents reported to the WHMC staff that E.R. had difficulty feeding throughout the night and that E.R. had experienced a period of sweating.  Later that morning, E.R. was evaluated, and a suspicion of hypoglycemia was

---

[1] The factual background is taken from the allegations in the complaint and the undisputed medical record evidence. *See Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986) (stating that when deciding a Rule 12(b)(1) motion a court may consider the complaint supplemented by undisputed facts in the record).

1

verified.[2] E.R. was immediately admitted to neonatal intensive care. She was approximately 45 hours old at the time of admittance. Over the next 10 hours, E.R. was evaluated for possible bacterial sepsis or a viral infection. During this time, she experienced marked fluctuations of blood glucose values. Intravenous control of her blood glucose values proved difficult and hydrocortisone was added to her treatment in an attempt to invoke a steroid hyperglycemia.

At 55 hours of life, E.R. manifested abnormal physical signs consistent with neonatal seizure activity. These signs included lip smacking, eye fluttering, and right-sided body posturing. A computerized tomogram of E.R.'s head at the time detected intracranial hemorrhaging.

Two days later, on March 27, 2005, Dr. Cody Henderson, WHMC Staff Neonatologist, discussed E.R.'s situation and treatment with Mr. and Ms. Rodriguez. His staff log records the parent meeting and notes, "concerns for poor feeding, murmur, hypoglycemia at >24 hours old, and subsequent seizures." Staff Progress Notes, Mot. to Dismiss, Ex. A. On March 29, 2005, a magnetic resonant image ("MRI") revealed marked changes in the brain that confirmed intracranial hemorrhaging and were consistent with brain injury secondary to profound neonatal hypoglycemia (i.e. hypoglycemic encephalopathy). On March 31, 2005, Dr. Leslie Van Schaak updated Mr. and Ms. Rodriguez on E.R.'s MRI results. These results confirmed E.R.'s brain injury. Medical Record Progress Note, Mot. to Dismiss, Ex. B.

The next day, April 1, 2005, Mr. and Ms. Rodriguez met with E.R.'s treating physicians. E.R.'s doctors explained to her parents that E.R. suffered a period of severe hypoglycemia, which caused occipital and parietal brain injury. Medical Record Progress Note, Mot. to Dismiss, Ex. C; Pediatric Clinic Family Conference Note, Mot to Dismiss, Ex. D. The doctors stated that

---

[2] Hypoglycemia is a condition associated with low blood glucose levels. *See Branham v. Snow*, 392 F.3d 896, 899 (7th Cir. 2004) ("Severe hypoglycemia may lead to unconsciousness and convulsions and can be life-threatening.").

the cause of E.R.'s hypoglycemia was unknown.  Metabolic disease was not ruled out, although glycogen storage disease was an unlikely cause.  Mr. and Ms. Rodriguez were advised to prepare for the possibility that E.R. could have permanent neurological dysfunction and developmental delays.  The doctors stated that the extent of E.R.'s injury and the degree of recovery would only be known with time.  Mr. and Ms. Rodriguez were given the opportunity to ask questions, which they did. Jessica Rodriguez Aff. at 1, Resp., Ex. A.  The meeting lasted 90 minutes.

   As a young child, E.R. experienced speech and developmental delays.  When she was 15 months old, E.R. suffered debilitating seizures.  During her early childhood, E.R. was taken to a succession of doctors.  On January 8, 2007, Mr. and Ms. Rodriguez took E.R. to the Easter Seals Early Childhood Intervention Program.  Ms. Rodriguez filled out E.R.'s intake form. Easter Seals Early Childhood Intervention Program Intake Form, Mot. to Dismiss, Ex. E.  On this form she indicated that on the second day of E.R's life "she was not eating" and suffered seizures. Further, Ms. Rodriguez indicated that E.R. suffered brain damage.  On February 20, 2007, Mr. and Ms. Rodriguez took E.R. to the WHMC Emergency Room.  On the intake form, E.R.'s parents again indicated that E.R. suffered brain injury at birth. WHMC Emergency Dep't Physician Record, Mot. to Dismiss, Ex. F.  Again, on April 9, 2007, Mr. and Ms. Rodriguez took E.R. to the hospital. The doctor's report from the visit noted that E.R. had a "[history] of epilepsy as a result of hypoxic brain injury at [day of life] 2." BAMC Pediatric Narrative Summ., Mot. to Dismiss, Ex. G.  Presumably, E.R.'s parents provided the treating physician with E.R.'s medical history.  A few months later, on July 17, 2007, E.R. again received medical attention.  The doctor's report noted, "[p]arents state that E.R. became hypoglycemic on day two of life. . . . She has had a cranial MRI which her parents state has revealed some sort of abnormality."

3

Chronological Record of Medical Care, Mot. to Dismiss, Ex. H.  E.R. is now 8 years-old and believed to have permanent brain damage.

**B. Procedural History**

In 2011, Mr. and Ms. Rodriguez were advised by Ms. Rodriguez's brother to contact Mark Mueller, Plaintiffs' current counsel.  Mr. and Ms. Rodriguez met with Mr. Muller, who had a purported expert review E.R.'s medical records.  The purported expert determined that E.R.'s injuries were preventable had E.R. received better newborn care.  Armed with this opinion, on November 24, 2011, Plaintiffs filed an administrative claim with the United States Air Force. On March 13, 2013, Plaintiffs' administrative claim was denied.  Thereafter, on July 9, 2013, Plaintiffs filed their complaint with this Court.

By their complaint, Plaintiffs allege that the doctors and nurses at WHMC negligently provided, or omitted from providing, neonatal care to E.R. by failing to properly diagnose, monitor, and treat E.R.  Specifically, Plaintiffs assert that the medical staff at WHMC negligently documented, or failed to document, E.R.'s small gestational size and E.R.'s difficulty feeding, and failed to timely and properly react to E.R.'s difficulty feeding.  Plaintiffs assert a Federal Tort Claims Act ("FTCA") claim against Defendant United States of America for WHMC's staff's alleged negligence.

On September 10, 2013, Defendant filed a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, asserting that the Court lacks subject matter jurisdiction over the claims brought by Plaintiffs because the claims are barred by the FTCA's two-year limitations period.  Defendant asserts that Plaintiffs' cause of action accrued on March 29, 2005, when an MRI of E.R.'s brain revealed damage.  Since Plaintiffs waited until 2011 to bring their administrative claim, Defendant asserts that their suit is not timely and, therefore, the Court lacks

jurisdiction. Further, Defendant asserts that the Servicemembers Civil Relief Act ("SCRA") does not toll the period of limitations for Ms. Rodriguez and E.R.

## II. Standard of Review

Dismissal under Federal Rules of Civil Procedure Rule 12(b)(1) is proper "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998). The party asserting federal jurisdiction bears the burden of proving jurisdiction. *In re FEMA Trailer Formaldehyde Products Liab. Litig.*, 646 F.3d 185, 189 (5th Cir. 2011). The FTCA's statute of limitations is jurisdictional. *Id*. Thus, here, Plaintiffs must prove jurisdiction by establishing that they filed their FTCA lawsuit within the limitations period.

When considering a motion to dismiss for lack of jurisdiction, courts may consider evidence outside of the complaint and dismiss on the bases of: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County,* 798 F.2d 736, 741 (5th Cir. 1986). Here, the parties have submitted various medical records into evidence. Neither party disputes the submitted evidence; therefore, the Court will consider the complaint, supplemented by the evidence in the record.

## III. Discussion

### A. The FTCA

The FTCA provides for a limited waiver of the United States' sovereign immunity to allow plaintiffs to proceed on tort claims. 28 U.S.C. § 1346(b); *see United States v. Kubrick,* 444 U.S. 111, 117–18 (1979). While substantive state law determines whether an underlying cause

5

of action exists, federal law determines when the action accrues and whether suit is barred by limitations. *Johnston v. United States,* 85 F.3d 217, 219 (5th Cir. 1996).

The FTCA bars a tort action against the federal government unless the claim is first presented to the appropriate federal agency within two years from the date the cause of action accrues. 28 U.S.C. § 2401(b); *see In re FEMA*, 646 F.3d at 189 (5th Cir. 2011). The Act does not define when a cause of action accrues. Instead, the Supreme Court has instructed that a claim accrues when a plaintiff knows both her injury and its cause. *Kubrick*, 444 U.S. at 123; *In re FEMA*, 646 F.3d at 190. In medical malpractice cases, "where the injury or its cause may not be manifested to the plaintiff until many years after the event, the tort action does not 'accrue' for statute of limitations purposes, until the plaintiff is put on notice of the wrong." *MacMillan v. United States*, 46 F.3d 377, 381 (5th Cir. 1995). Thus, "the statute of limitations period does not begin to run until after the patient discovers or in the exercise of reasonable diligence should discover his injury and its cause." *Id.*

Accrual, however, is not delayed until a putative plaintiff discovers the legal or medical significance of an act or injury. *Id*. Instead, the limitations period begins to run when the plaintiff has "knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection between the treatment and injury or (b) to seek professional advice, and then with that advice, to conclude that there was a causal connection between the treatment and injury." *Id.* Congress did not intend that "'accrual' of a claim must await awareness by the plaintiff that his injury was negligently inflicted." *Kubrick*, 444 U.S. at 123.

Here, Plaintiffs unquestionably knew of E.R.'s injury by 2007, at the latest. On March 25, 2005, a computerized tomogram of E.R.'s head revealed intracranial hemorrhaging. On March 29, an MRI confirmed the intracranial hemorrhaging and noted changes to the bilateral

occipital and parietal brain cortices. On March 31 and April 1, 2005, the extent of E.R.'s injuries was explained to Mr. and Ms. Rodriguez. Thereafter, in 2007, Mr. and Ms. Rodriguez described E.R.'s brain injuries to her doctors. *See e.g.* Easter Seals Early Childhood Intervention Program Intake Form, Mot. to Dismiss, Ex. E (Ms. Rodriguez indicating on the medical intake form that E.R. suffered brain damage at day two of life).

Plaintiffs assert that they were misled by E.R.'s physicians at WHMC into believing that E.R. would recover, and, therefore, Plaintiffs contend, they did not know that E.R had suffered injuries. Plaintiffs explain that at the April 1, 2005 meeting, E.R.'s physicians explained to Mr. and Ms. Rodriguez that the brain is a powerful organ and that a baby's cells heal faster than an adult's cells. However, regardless of E.R's potential to recover, it was clear to Plaintiffs in March and April 2005 that E.R. suffered a brain injury, as confirmed by the computerized tomogram and the MRI. Moreover, Plaintiffs knew by 2007, at the latest, that E.R.'s brain injury had not healed and that E.R. showed developmental delays and suffered generalized seizures. Further, the evidence shows that in 2007, Mr. and Ms. Rodriguez filled out medical intake forms and informed E.R.'s treating physicians that E.R. suffered a brain injury as an infant. Thus, by 2007, at the latest, Plaintiffs knew that E.R. had suffered a brain injury. *See MacMillan v. United States*, 46 F.3d 377, 382 (5th Cir. 1995) (finding that even when tests showed no evidence of brain injury at birth, a mother had knowledge of her daughter's injury, at the latest, when a psychologist explained to the mother the likely link between the daughter's developmental delays and neurological damages suffered at birth).

Furthermore, and relevant to the second prong of the claim accrual test, Plaintiffs knew the cause of E.R.'s brain injuries by 2007, at the latest. In *United States v. Kubrick*, the Supreme Court explained that knowledge of the "cause of injury," for purposes of the accrual test, simply

means knowledge of the course of treatment and knowledge of the treatment's link to the injury. 444 U.S. at 122. In *Kubrick*, a plaintiff knew that an infection of his right femur was treated with neomycin. *Id.* at 113. The plaintiff also knew that there was a high probability that the neomycin treatment caused him hearing loss. *Id.* at 114. What the plaintiff did not know—until sometime after the limitations period had run—was that the doctor's treatment of the infection with neomycin was negligent. *Id.* at 115, 122. Since the plaintiff in *Kubrick* did not inquire in the legal and medical communities as to his legal rights until after the limitations period had run, the Court determined that the suit he subsequently brought was untimely and barred by limitations. *Id.* at 122–23.

The Fifth Circuit has interpreted *Kubrick* to hold that an FTCA claim accrues when a plaintiff has "knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection between the treatment and injury or (b) *to seek professional advice,* and then with that advice, to conclude that there was a causal connection between the treatment and injury." *Johnson v. United States*, 460 F.3d 616, 621 (5th Cir. 2006) (emphasis in the original). For instance, in *Johnson v. United States*, a child was delivered by means of a "crash cesarean section." *Id.* 617. The newborn's heart and breathing stopped until resuscitated on a third attempt. *Id.* Thereafter, the baby experienced developmental delays. *Id.* at 618. About a year after birth, the baby was diagnosed with cerebral palsy, and the birth trauma was presented to the mother by the child's pediatrician as a "potential cause." *Id.* Nearly six years later, the mother filed suit against the birth hospital. *Id.* at 619. The Fifth Circuit held that the plaintiff filed her lawsuit after the limitations period had run, and, therefore, the court lacked jurisdiction to hear her FTCA claim. *Id.* at 611–12. The court determined that when informed by the pediatrician of the baby's cerebral palsy and a "probable cause," the mother had a duty "to seek professional

advice regarding [the baby's] neurological difficulties and the connection, if any, to the problems associated with her birth." *Id.* at 622 (quoting *MacMillan v. United States*, 46 F.3d 377, 381 (5th Cir. 1995). Since the mother did not fulfill her duty, and file suit, within the limitations period, the court found that her suit was barred. *Id.* The court concluded,

> "[the mother] knew that [her daughter] had cerebral palsy and that a potential and likely cause was something that happened at birth. Thus, as *Kubrick* explained, she did not need to know that the treatment at birth was negligent, as long as she knew that some injury could have occurred at birth. Nor, as the district court correctly observed, did she need to know exactly how the injury was inflicted at birth (*e.g.,* asphyxia or improper administration of Pitocin).

*Id.*

Here, Plaintiffs know that E.R has development delays and seizures, which they and their doctors attribute to a brain injury caused at birth. As explained above, Plaintiffs knew that E.R. suffered brain injuries by 2007, at the latest. Plaintiffs also knew by 2007, at the latest, that E.R.'s brain injuries were caused by a birth trauma. The facts alleged in the complaint and in evidence show that on April 1, 2005, E.R.'s doctors gathered together and explained the results of E.R's MRI and the course of her treatment to Mr. and Ms. Rodriguez. E.R.'s doctors also explained that shortly after E.R.'s birth, she experienced severe hypoglycemia. Thereafter in 2007, Mr. and Ms. Rodriguez explained to medical providers that E.R.'s developmental delays and seizures were caused by her birth trauma. Thus, by April 2005—and certainly by 2007— Plaintiffs were aware of a probable (and likely) cause of E.R.'s brain injuries, severe hypoglycemia. At this point, Plaintiffs had knowledge of E.R.'s injuries and a probable cause, and, therefore, their FTCA cause of action accrued. *See Kubrick*, 444 U.S. at 118; *Johnson*, 460 F.3d at 622–23 ("*Kubrick* . . . explained that as long as the nature and (potential) cause of the injury are known, a plaintiff need not know that the injury was negligently created [for the cause

9

of action to accrue]."); *see also MacMillan v. United States*, 46 F.3d 377, 381 (5th Cir. 1995) (finding that a school psychologist's explanation to a mother linking her daughter's developmental delays to birth complications would have compelled a reasonable person to seek professional advice and, therefore, triggered the running of the limitations period).

Plaintiffs assert that they did not discover the link between Defendant's alleged negligent neonatal care and E.R.'s permanent brain injury until they met with their purported medical expert. Plaintiffs' ignorance of their potential legal rights, however, did not delay the date of accrual. *See Kubrick*, 444 U.S. at 122 ("We thus cannot hold that Congress intended that 'accrual' of a claim must await awareness by the plaintiff that his injury was negligently inflicted."); *see also Johnson*, 460 F.3d at 623 (rejecting the plaintiff's contention that her claim did not accrue until she saw a lawyer's television commercial and connected her daughter's cerebral palsy to negligent treatment at birth).[3]

Accordingly, the Court finds that Plaintiffs' FTCA claim accrued by 2007, at the latest, and is time-barred unless the statute of limitations was otherwise tolled.

**B. Tolling**

Plaintiffs point to the Servicemembers Civil Relief Act ("SCRA") as a statute that tolls the limitations period for Mr. Rodriguez's FTCA claim. The SCRA tolls "any action or proceeding in any court . . . by or against any person in military service." 50 App U.S.C. § 526; *see Kerstetter v. United States*, 57 F.3d 362, 369 (4th Cir. 1995). Here, the complaint states that Mr. Rodriguez has been in military service from before the time of E.R's birth to the present.

---

[3] To the extent that Plaintiffs assert that the statute of limitations begins to run only when a plaintiff learns that an injury is attributable to iatrogenic (doctor-caused) harm, the Court notes that the proposition is not supported in this circuit. *Compare Johnson*, 460 F.3d at 621, *with Diaz v. United States*, 165 F.3d 1337, 1340 (11th Cir. 1999); *Drazen v. United States*, 762 F.2d 56 (7th Cir. 1985). Further, even if Plaintiffs' proposition were accepted, the facts alleged and the evidence in the record show that in March and April 2005, Plaintiffs knew, or should have known, of the alleged iatrogenic harm in this case, i.e. the failure of WHMC medical staff to adequately feed E.R., observe E.R., and respond to E.R.'s hypoglycemia in the hours and days after birth. In March and April 2005, Plaintiffs either observed directly, or were adequately informed of, E.R.'s neonatal treatment (or lack thereof).

Compl. ¶ 1.4.  Defendant does not challenge this assertion or the contention that the SCRA tolls Mr. Rodriguez's FTCA claim.  Thus, the Court denies Defendant's motion to dismiss Mr. Rodriguez's FTCA claim.[4]

Next, Defendant asserts that the SCRA does not toll the limitations period for Ms. Rodriguez's and E.R.'s FTCA claims.  Plaintiffs concede this point. *See* Resp. at 10.[5]  Therefore, the Court finds that the SCRA does not toll Ms. Rodriguez's and E.R.'s FTCA claims.  Since Plaintiffs do not suggest any other means of tolling, the Court grants Defendant's motion to dismiss Ms. Rodriguez's and E.R.'s FTCA claims. *See In re FEMA*, 646 F.3d 185, 189 (5th Cir. 2011) (stating that the party asserting federal jurisdiction bears the burden of proving jurisdiction).[6]

### IV. Conclusion

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendant's motion to dismiss (docket no. 10).  Accordingly, the FTCA claims brought by Plaintiffs Jessica Rodriguez and E.R. are dismissed.  The FTCA claim brought by Mr. Rodriguez remains, and he remains the only plaintiff in this case.

It is so ORDERED.

SIGNED this 17th day of December, 2013.

---

[4] The limitations period of an FTCA claim is jurisdictional. *See In re FEMA*, 646 F.3d at 189; *Houston v. U.S. Postal Serv.*, 823 F.2d 896, 902 (5th Cir. 1987).  Thus, if Defendant later offers evidence and argument challenging whether the SCRA tolls the statute of limitations as to Mr. Rodriguez's claim, the Court will reconsider the issue.

[5] Additionally, case law supports the proposition that a minor's FTCA claim is not tolled by the SCRA when a non-military representative could have brought the minor's claim. *See Miller v. United States*, 803 F.Supp 1120, 1131 n.4 (E.D. Va. 1992).

[6] Additionally, the Court notes that although E.R. is still a minor, her minority does not toll the FTCA limitations period. *See MacMillan v. United States*, 46 F.3d 377, 381 (5th Cir. 1995) ("[U]nder the FTCA, the limitations period is not tolled during the minority of the putative plaintiff; rather his parent's knowledge of the injuries is imputed to him."); *Santos ex rel. Beato v. United States*, 559 F.3d 189, 211 n.19 (3d Cir. 2009) (collecting cases where minority did not toll FTCA claims); *see also Houston v. U.S. Postal Serv.*, 823 F.2d 896, 902 (5th Cir. 1987) ("Equitable considerations that may waive or toll limitations periods in litigation between private parties do not have that same effect when suit is brought against the sovereign.").

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE