IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JESSICA RODRIGUEZ, et al., | § § § | |
| *Plaintiffs*, | § § | |
| v. | § | Civil Action No.  SA:13-CV-596-XR |
| UNITED STATES OF AMERICA, | § § § | |
| *Defendant*. | § § | |

## ORDER

On this day the Court considered Plaintiffs' motion to alter or amend the Court's judgment (docket no. 19).  By their motion, Plaintiffs request that the Court reconsider its dismissal of Plaintiffs Jessica Rodriguez and E.R. from the case.  For the following reasons, the Court DENIES Plaintiffs' motion.

## BACKGROUND[1]

Plaintiffs Jessica and Scottie Rodriguez are the parents of E.R.  On March 23, 2005, E.R. was born full term and delivered by a scheduled caesarian section at Wilford Hall Medical Center ("WHMC").  At the time of birth, the delivery room nurse noted that E.R. was "small for gestational age."  Nevertheless, at 45 minutes of life, E.R's doctor ordered her admitted to the normal newborn nursery, noting that her condition was good.  At both 3 and 12 hours of life, nursing evaluations were noted as "unremarkable" or "within normal limits."  At 36 hours of life, E.R.'s vital signs were noted as within normal limits, and E.R. continued "rooming in" with her mother.

---

[1] The factual background is taken from the allegations in Plaintiffs' complaint, the uncontested medical records, and Plaintiff Jessica Rodriguez's affidavit submitted in response to Defendant's motion to dismiss. *See* Order, Docket No. 17, at 1–4 (citing to the record).

1

On March 25, 2005, E.R.'s second day of life, her parents reported to the WHMC staff that E.R. had difficulty feeding throughout the night and that E.R. had experienced a period of sweating. Later that morning, E.R. was evaluated, and a suspicion of hypoglycemia was verified. E.R. was immediately admitted to neonatal intensive care at approximately 45 hours old. Over the next 10 hours, E.R. experienced marked fluctuations of blood glucose values. Intravenous control of her blood glucose values proved difficult, and hydrocortisone was added to her treatment in an attempt to invoke a steroid hyperglycemia.

At 55 hours of life, E.R. manifested abnormal physical signs consistent with neonatal seizure activity. A computerized tomogram of E.R.'s head at the time detected intracranial hemorrhaging. Two days later, on March 27, 2005, Dr. Cody Henderson, WHMC Staff Neonatologist, discussed E.R.'s situation and treatment with Mr. and Ms. Rodriguez. On March 29, 2005, a magnetic resonant image ("MRI") revealed marked changes in the brain that confirmed intracranial hemorrhaging and were consistent with brain injury secondary to profound neonatal hypoglycemia (i.e. hypoglycemic encephalopathy). On March 31, 2005, Dr. Leslie Van Schaak updated Mr. and Ms. Rodriguez on E.R.'s MRI results. These results confirmed E.R.'s brain injury.

The next day, April 1, 2005, Mr. and Ms. Rodriguez met with E.R.'s treating physicians. E.R.'s doctors explained to her parents that E.R. suffered a period of severe hypoglycemia, which caused occipital and parietal brain injury. The doctors stated that the cause of E.R.'s hypoglycemia was unknown. Metabolic disease was not ruled out, although glycogen storage disease was an unlikely cause. Mr. and Ms. Rodriguez were advised to prepare for the possibility that E.R. could have permanent neurological dysfunction and developmental delays. The doctors stated that the extent of E.R.'s injury and the degree of recovery would only be

known with time.  Mr. and Ms. Rodriguez were given the opportunity to ask questions, which they did.  The meeting lasted 90 minutes.

As a young child, E.R. experienced speech and developmental delays.  When she was 15 months old, E.R. suffered debilitating seizures.  During her early childhood, E.R. was taken to a succession of doctors.  On January 8, 2007, Mr. and Ms. Rodriguez took E.R. to the Easter Seals Early Childhood Intervention Program.  Ms. Rodriguez filled out E.R.'s intake form.  On this form she indicated that on the second day of E.R's life "she was not eating" and suffered seizures.  Further, Ms. Rodriguez indicated that E.R. suffered brain damage.  On February 20, 2007, Mr. and Ms. Rodriguez took E.R. to the WHMC Emergency Room.  On the intake form, E.R.'s parents again indicated that E.R. suffered brain injury at birth.  Again, on April 9, 2007, Mr. and Ms. Rodriguez took E.R. to the hospital.  The doctor's report from the visit noted that E.R. had a "[history] of epilepsy as a result of hypoxic brain injury at [day of life] 2."  A few months later, on July 17, 2007, E.R. again received medical attention.  The doctor's report noted, "[p]arents state that E.R. became hypoglycemic on day two of life. . . . She has had a cranial MRI which her parents state has revealed some sort of abnormality."  E.R. is now 8 years old and believed to have permanent brain damage.

## PROCEDURAL HISTORY

In 2011, Mr. and Ms. Rodriguez were advised by Ms. Rodriguez's brother to contact Mark Mueller, Plaintiffs' current counsel.  Mr. and Ms. Rodriguez met with Mr. Muller, who had a purported expert review E.R.'s medical records.  The purported expert determined that E.R.'s injuries were preventable had E.R. received better newborn care.  Armed with this opinion, on November 24, 2011, Plaintiffs filed an administrative claim with the United States Air Force.  On

March 13, 2013, Plaintiffs' administrative claim was denied.  Thereafter, on July 9, 2013, Plaintiffs filed their complaint with this Court.  Docket No. 1.

By their complaint, Plaintiffs allege that the doctors and nurses at WHMC negligently provided, or omitted from providing, neonatal care to E.R. by failing to properly diagnose, monitor, and treat E.R.  Specifically, Plaintiffs assert that the medical staff at WHMC negligently documented, or failed to document E.R.'s small gestational size and E.R.'s difficulty feeding and failed to timely and properly react to E.R.'s difficulty feeding.  Plaintiffs assert a Federal Tort Claims Act ("FTCA") claim against Defendant United States of America for WHMC's staff's alleged negligence.

On September 10, 2013, Defendant filed a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, asserting that the Court lacks subject matter jurisdiction over the claims brought by Plaintiffs because the claims are barred by the FTCA's two-year limitations period.  Docket No. 10.  On December 17, 2013, the Court granted in part and denied in part Defendant's motion to dismiss.  Docket No. 17.  The Court barred Plaintiffs Jessica Rodriguez and E.R. from pursuing their claims because they filed suit outside of the two-year limitations period.  The Court allowed Plaintiff Scottie Rodriguez to pursue his claim because his claim was tolled under the Servicemembers Civil Relief Act. 50 App U.S.C. § 526.  On January 14, 2014, Plaintiffs filed a motion to alter or amend the Court's Order, arguing that the Court incorrectly determined the date upon which Plaintiffs' cause of action accrued.  Plaintiffs assert that their FTCA claim did not accrue until they consulted legal counsel and a purported medical expert in 2011.  Before that time, Plaintiffs assert they did not have any reason to conclude that a causal connection existed between E.R.'s neonatal medical treatment and her brain injury.

4

## LEGAL STANDARD

A motion to alter or amend a judgment under Rule 59(e) is an "extraordinary remedy" seldom used by the courts. *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). The district court's judgment "will not be disturbed in the absence of a showing that it has worked an injustice." *Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 814 (5th Cir. 1996). The motion "serves[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Templet*, 367 F.3d at 479 (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). Additionally, relief is appropriate when there has been an intervening change in the controlling law. *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). A Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 479.

Because altering or amending a judgment is such an extraordinary remedy, the Rule 59(e) standard favors denial of such motions. *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993). Nevertheless, since specific grounds for granting a motion to alter or amend are not listed in the Rules, a district court enjoys considerable discretion in granting or denying the motion. *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993); *see Templet*, 367 F.3d at 477 (stating that a district court's Rule 59(e) decision will be reviewed only for abuse of discretion). However, a court's discretion is not without limits. *See id.* at 355 ("The court must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts.").

## DISCUSSION

Plaintiffs have not established grounds for altering or amending the Court's December 17, 2013 Order dismissing Ms. Rodriguez and E.R. from the case. *See* FED. R. CIV. P. 59(e).

First, Plaintiffs have not shown a manifest error of law, but instead re-urge their previous arguments. Plaintiffs insist that their FTCA cause of action did not accrue until around 2011 when they met with their purported medical expert, who told them that E.R.'s brain injury was negligently caused. However, as this Court previously explained, ignorance of a plaintiff's potential legal rights does not delay the date upon which an FTCA cause of action accrues. Docket No. 17, at 5–10; s*ee United States v. Kubrick*, 444 U.S. 111, 123 (1979); *Johnson v. United States*, 460 F.3d 616, 623 (5th Cir. 2006). Instead, an FTCA cause of action accrues when a person has "*knowledge of facts* that would lead a reasonable person (a) to conclude that there was a causal connection between the treatment and injury or (b) to seek professional advice, and then with that advice, to conclude that there was a causal connection between the treatment and injury." *MacMillan v. United States*, 46 F.3d 377, 381 (5th Cir. 1995) (emphasis added). The focus of the *Kubrick* FTCA accrual test is a plaintiff's knowledge of facts, not whether a plaintiff, individually or with the help of a medical expert, has determined that his or her injury was negligently caused. *Kubrick*, 444 U.S. at 123. Here, by 2007, at the latest, Plaintiffs knew that E.R. had experienced a period of severe hypoglycemia soon after birth and suffered a brain injury. Plaintiffs also knew the course of E.R's neonatal treatment (or lack thereof). Armed with this knowledge, a reasonable person would have concluded that a causal connection existed between the treatment E.R. received and the injury she sustained, or a reasonable person would have sought professional advice. *See Johnson v. United States*, 460 F.3d 616, 621 (5th Cir. 2006) ("[the mother] knew that [her daughter] had cerebral palsy and that

a potential and likely cause was something that happened at birth. Thus, as *Kubrick* explained, she did not need to know that the treatment at birth was negligent, as long as she knew that some injury could have occurred at birth."). That Plaintiffs did not seek to consult their preferred medical expert until 2011 did not prevent Plaintiffs' claim from accruing when they were armed with knowledge of the relevant facts.

Next, Plaintiffs have not presented newly discovered evidence; nor have Plaintiffs alleged an intervening change in controlling law. *See Templet*, 367 F.3d at 479; *Schiller*, 342 F.3d at 567. Although courts have considerable discretion to grant or deny a Rule 59(e) motion, where there has been no showing that the Court did not consider the current law, applied to the relevant facts, the imperative for finality dominates. *Edward H. Bohlin Co.*, 6 F.3d at 355. Accordingly, Plaintiffs' Rule 59(e) motion to alter or amend the Court's December 17, 2013 Order is denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to alter or amend (docket. no. 19) is DENIED.

It is so ORDERED.

SIGNED this 11th day of February, 2014.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE